```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
                          CLARKSBURG
```

**ERIC J. GODFREY,**

      **Plaintiff,**

      v.                                      Civ. Action No. 1:19-CV-64
                                                                                   (Kleeh)

**U.S. BANK, N.A.,**
**doing business as**
**U.S. Bank Home Mortgage,**

      **Defendant.**

```
               MEMORANDUM OPINION AND ORDER
          GRANTING MOTION TO REMAND [ECF NO. 24]
```

      Pending before the Court is a Motion to Remand filed by the Plaintiff, Eric J. Godfrey ("Plaintiff"). For reasons discussed herein, the Court grants the motion.

                             **I.    PROCEDURAL HISTORY**

      On March 22, 2019, this action was timely removed from the Circuit Court of Marion County, West Virginia. ECF No. 1. Plaintiff brings seven (7) causes of action against the Defendant, U.S. Bank, N.A., d/b/a U.S. Bank Home Mortgage ("Defendant"), related to allegedly abusive loan servicing. The Court granted six (6) consent motions to stay the proceedings based on the parties' representations that they were involved in settlement negotiations. The Court granted a final consent motion on September 9, 2019. Defendant then filed an Answer. Plaintiff filed a Motion

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 24]**

to Remand, and Defendant responded. Plaintiff did not file a Reply. The Motion to Remand is ripe for consideration.

## II. GOVERNING LAW

When an action is removed from state court, the district court must determine whether it has original jurisdiction over the plaintiff's claims. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" Id. (citations omitted). "Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994) (citation omitted).

When a party seeks to remove a case based on diversity of citizenship, that party bears the burden of establishing that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states[.]" 28 U.S.C. § 1332. If the complaint does not contain a specific amount in controversy and the defendant files a notice of removal, "the defendant bears the burden of proving that the claim meets the requisite jurisdictional amount," and "the court may consider the entire record" to determine whether that burden is met. Elliott v. Tractor Supply Co., No. 5:14CV88,

2014 WL 4187691, at *2 (N.D.W. Va. Aug. 21, 2014) (citation omitted).

If the action seeks declaratory or injunctive relief, the amount in controversy is measured by the "value of the object of the litigation." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977). This is measured by "the pecuniary result to either party which [a] judgment would produce." Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002) (quoting Gov't Emps. Ins. Co. v. Lally, 327 F.2d 568, 569 (4th Cir. 1964)).

If the defendant sufficiently proves by a preponderance of the evidence that the amount in controversy exceeds $75,000 and the parties are diverse, then removal is proper. Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 553-54 (2014). "[A]bsent a binding stipulation signed by [the plaintiff] that he will neither seek nor accept damages in excess of $75,000, the Court must independently assess whether the defendant[] ha[s] proven by a preponderance of the evidence that [the] . . . complaint seeks damages in excess of $75,000." Virden v. Altria Group, Inc., 304 F. Supp. 2d 832, 847 (N.D.W. Va. 2004). The determination of whether the amount in controversy is satisfied is left to the Court's "common sense." Mullins v. Harry's Mobile Homes, Inc., 861 F. Supp. 22, 24 (S.D.W. Va. 1994).

### III. THE COMPLAINT

On April 9, 2013, Plaintiff bought his home at 478 Monumental Road in Fairmont, West Virginia. See Compl., ECF No. 1-1, at ¶ 4. He financed the purchase with a mortgage loan from WesBanco for $160,815.00, at an interest rate of 3.25%, over a period of thirty (30) years. Id. His wife at the time, Misti Godfrey, was the co-borrower on the loan. Id. ¶ 14. The loan was insured by the Federal Housing Administration ("FHA") under the Single Family Housing Program. Id. ¶ 5.[1]

In 2015, Plaintiff and his wife divorced, and Plaintiff became the sole owner of the home and solely responsible for the loan. Id. ¶¶ 13, 15. When Plaintiff fell ill and struggled to make payments, Plaintiff sought loss mitigation assistance to avoid foreclosure. Id. ¶ 16. The Complaint details a number of interactions with Defendant, during which Defendant allegedly misled Plaintiff about steps he must take to proceed with loss mitigation. Multiple foreclosure sales were scheduled, the most recent of which was canceled when this litigation commenced.

Plaintiff argues that Defendant did not appropriately evaluate Plaintiff for home retention options prior to

---

[1] Under this arrangement, Defendant is able to recover any losses it experiences as a result of foreclosure. Id. ¶ 6. Plaintiff paid an FHA insurance premium as part of his closing costs and continues to pay monthly premiums annually. Id. ¶ 7.

acceleration and foreclosure. Id. ¶ 46. Defendant allegedly ignored his documentation, canceled his loss mitigation application, and did not provide a right to appeal its decisions. Id. While this was occurring, Plaintiff's arrears accrued. Id. ¶ 47. Plaintiff argues that Defendant did not follow commercially reasonable standards in servicing the loan and failed to comply with applicable laws, regulations, and guidelines regarding the processing of loss mitigation applications. Id. ¶ 48.

The Complaint alleges that Defendant breached its contract with Plaintiff by, among other things, failing to follow the applicable federal regulations that were incorporated into the Deed of Trust. Plaintiff argues that Defendant violated the West Virginia Consumer Credit and Protection Act ("WVCCPA") by failing to accept and credit payments, making misrepresentations, failing to provide a statement of default charges, collecting or attempting to collect illegal fees, and engaging in unconscionable debt collection. He also brings a claim of negligence.

## IV. DISCUSSION

This case was removed on March 22, 2019, based on diversity jurisdiction. It is undisputed that the parties in this action are diverse.[2] At issue is the amount in controversy. Defendant argues

---

[2] Plaintiff is a citizen of West Virginia. See Notice of Removal, ECF No. 1, at ¶ 5; Compl, ECF No. 5, at ¶ 2. Defendant is a national

that because Plaintiff seeks to prevent the foreclosure of his home, the amount in controversy is at least $160,815.00 (the mortgage loan amount in the Deed of Trust) or $111,300.00 (the 2019 tax assessment value of the home). Plaintiff argues that the relief he seeks is narrower. Plaintiff's position is that his true aim is loss mitigation assistance, so the value of the home should not be considered as part of the amount in controversy.

In Lanham Ford, Inc. v. Ford Motor Co., the United States Court of Appeals for the Fourth Circuit discussed the difference between the object of the litigation and the future goal or impact of it:

> Though it is doubtless true that Lanham's ultimate strategic goal is to retain the dealership and the Ford Motor franchise, the object of the present litigation is narrower than this goal. In the present litigation, Lanham seeks only a new hearing before the Policy Board, with rights of full discovery, and an injunction against termination of the franchise pending completion of this new hearing. This requested relief, and not the dealership itself, constitutes the object of the present litigation.

101 F. App'x 381, 382 (4th Cir. 2004) (unpublished per curiam). Therefore, "it is crucial to determine precisely what relief the

---

banking association; its main office is located in Ohio. See Notice of Removal, ECF No. 1, at ¶ 6.

plaintiff seeks." See Addington v. LoanDepot.com, LLC, No. 2:17-CV-104, 2017 WL 4685428, at *3 (N.D.W. Va. Oct. 18, 2017).

In Addington, this court examined a similar question. Even though the plaintiffs in Addington had mentioned in their complaint that they brought the action "to stop the foreclosure sale and save their home," the court, reading the complaint in its entirety, found that the relief sought by the plaintiff was narrower:

> The plaintiffs may even ultimately wish to prevent their home from being foreclosed upon, but the object *actually at issue in this litigation* relates to the parties' rights and obligations under the FHA regulations incorporated into the contract. Neither party has provided monetary figures by which they value these rights, nor is the value clear from the record.

Id. at *5 (citation omitted).

The Addington court discussed a pattern of cases finding that when the plaintiff is still obligated on the loan, and foreclosure is not the only available remedy, the value of the home is not included in the amount in controversy. See id. ("In cases where the court found that the full balance of the loan was the amount in controversy, the common thread was that foreclosure was the defendant's only avenue to collect on the debt."); see also Winnell v. HSBC Mortg. Servs., Inc., No. 2:11-cv-561, 2011 WL 5118805, at *2 (S.D.W. Va. Oct. 28, 2011) (including the outstanding loan balance because personal liability on the loan was discharged in

bankruptcy and foreclosure was the sole recourse to enforce the loan); Carter v. Nat'l City Mortg., Inc., No. 1:14CV70, 2014 WL 2862953, at *3 (N.D.W. Va. 2014) (including the outstanding loan balance because personal liability on the loan was discharged in bankruptcy, there was no stipulation regarding the amount in controversy, and the record clearly established the amount of the outstanding loan balance).

Defendant relies heavily on Hudak v. Selene Finance LP, but Hudak is easily and importantly distinguishable from this case. In Hudak, the plaintiffs also sought loss mitigation assistance. No. 1:15CV20, 2015 WL 1539740, at *2 (N.D.W. Va. Apr. 7, 2015). The court found that for the plaintiffs, the value was not found in the loss mitigation review process itself, but "derives from the potential that, as a consequence of the review process, they will avoid foreclosure and the loss of their home." Id. at *4. The court, therefore, included the full balance of the loan in the amount in controversy. Id. The Hudak plaintiffs had filed for a Chapter 7 bankruptcy over a year before the case was filed, and the plaintiffs' obligation on the loan was discharged through the bankruptcy proceeding. Id. at *1. This meant that the defendant in Hudak had no option other than foreclosure to recover the amount in arrears.

Here, while Plaintiff obviously wants to prevent the foreclosure of his home, preventing foreclosure is not the object of the litigation. Like in Addington, this litigation relates to the parties' rights and obligations under the FHA regulations incorporated into the contract. As Plaintiff points out, unlike in Hudak, he remains obligated on his mortgage loan agreement. See ECF No. 24-1 at 11. Even if the amount in controversy were to include the remaining balance on the loan, nothing in the record indicates the amount of the remaining balance on the loan.

Finally, while Plaintiff did not file a stipulation that he seeks damages under $75,000,[3] the damages alleged cannot be predicted with any certainty. Defendant is correct that $1,000 could be awarded for every violation under the WVCCPA, but it is also correct that Plaintiff seeks damages for an unspecified and

---

[3] While Plaintiff has not so stipulated, he has strenuously and effectively argued that the amount in controversy is not satisfied here. Because this Court lacks jurisdiction, it leaves to the Circuit Court of Marion County the question of damages going forward. See Bresler v. Wilmington Trust Co., 348 F. Supp. 3d 473, 490 (D. Md. 2018) (The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") (citation and quotation omitted); see also Quicken Loans, Inc. v. Brown, 236 W. Va. 12, 43, 777 S.E.2d 581, 612 (2014) ("The doctrine of [j]udicial estoppel is a common law principle which precludes a party from asserting a position in a legal proceeding inconsistent with a position taken by that party in the same or a prior litigation.") (quotation and citation omitted).

indeterminate number of violations. While the Court may consider attorneys' fees in determining the amount in controversy,[4] based on the record before the Court, any finding as to the amount of attorneys' fees at stake would be based on pure conjecture. See Woodfell v. Gateway Mortg. Grp., LLC, No. 2:19-cv-658, 2020 WL 3964758, at *19-20 (S.D.W. Va. July 13, 2020). Defendant has not demonstrated by a preponderance of the evidence that over $75,000 is at issue.

## V. CONCLUSION

For the reasons discussed above, the Motion to Remand is **GRANTED** [ECF No. 24]. This action is hereby **REMANDED** to the Circuit Court of Marion County, West Virginia.

It is so **ORDERED**.

---

[4] Barnikowski v. NVR, INC., 307 F. App'x 730, 736 n.12 (4th Cir. 2009) (writing that when a "statute provides for the recovery of attorneys' fees as a substantive right, they are properly includable in the amount in controversy estimate"). Attorneys' fees are recoverable under the WVCCPA. See W. Va. Code § 46A-5-104 ("In any claim brought under this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice, the court may award all or a portion of the costs of litigation, including reasonable attorney fees, court costs and fees, to the consumer. On a finding by the court that a claim brought under this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice was brought in bad faith and for the purposes of harassment, the court may award to the defendant reasonable attorney fees.").

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 24]**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record and to the Clerk of the Circuit Court of Marion County, West Virginia.

DATED: August 7, 2020

_____
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE